**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING<br>1400 65th St., Suite 200<br>Emeryville, CA 94608, | : : : : : : | CIVIL ACTION |
| Plaintiff, | : : | NO. _____ |
| v. | : : | |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY<br>1234 Market Street<br>Philadelphia, PA 19107, | : : : : : | |
| Defendant. | : : | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
(Violation of First and Fourteenth Amendment Rights)

**INTRODUCTION**

1.     In January 2018, the Center for Investigative Reporting ("CIR"), which was founded in 1977 as the nation's first nonprofit investigative news organization, applied to advertise on the interior of buses operated by Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA"). The advertisements concerned reporting from CIR's news site, Reveal, which found racial disparities in the conventional home mortgage market.

2.     SEPTA denied the application, relying on two provisions of its current standards for advertising, which purport to prohibit (a) "advertisements involving an issue that is political in nature in that it directly or indirectly implicates the action, inaction, prospective action or policies of a government entity" and (b) "[a]dvertisements expressing or advocating an opinion, position or viewpoint on matters of public debate about economic, political, religious, historical

1

or social issues."  In full, Sections II.A.9(b)(iv)(a) and II.A.9(b)(iv)(b) of SEPTA's advertising

standards (the "Challenged Provisions") provide:

> <u>Prohibited Advertising Content.</u>  Advertising is prohibited
> on transit facilities, products and vehicles if it or its content falls
> into one or more of the following categories –
>
> (a) Advertisements promoting or opposing a political party,
> or promoting or opposing the election of any candidate or group of
> candidates for federal, state, judicial or local government offices
> are prohibited. In addition, advertisements that are political in
> nature or contain political messages, including advertisements
> involving political or judicial figures and/or advertisements
> involving an issue that is political in nature in that it directly or
> indirectly implicates the action, inaction, prospective action or
> policies of a government entity.
>
> (b) Advertisements expressing or advocating an opinion,
> position or viewpoint on matters of public debate about economic,
> political, religious, historical or social issues.

Second Amendment to the Agreement by and Between SEPTA and Titan Outdoor LLC (the

"2015 Advertising Standards"), attached hereto as Exhibit A.  These two provisions are followed

by twenty other categories of prohibited advertising content.  *See id.*

      3.    SEPTA's denial of CIR's proposed advertising violates CIR's rights under the

United States Constitution.  SEPTA's broad prohibitions on advertising content that it concludes

is "political[,]"  "directly or indirectly implicates the action . . . of a government entity[,]" or

involves "matters of public debate" violate the First Amendment.

      4.    CIR still wishes to promote its news reporting on racial disparities in conventional

home mortgage markets in SEPTA advertising spaces.  In addition, CIR anticipates that in the

future it will want to place other ads on SEPTA's advertising spaces, and that, because of CIR's

focus on investigative journalism, those ads are likely to be deemed by SEPTA to be "political"

and to touch on matters of "public debate."

5.    CIR is suffering irreparable injury during the time its ads are not permitted on SEPTA advertising spaces.

6.    Therefore, CIR brings this action for declaratory and injunctive relief under 42 U.S.C. § 1983 to vindicate its rights under the First and Fourteenth Amendments to the United States Constitution.

## THE PARTIES

7.    Plaintiff CIR is a 501(c)(3) non-profit corporation whose mission is to engage and empower the public through investigative journalism and groundbreaking storytelling which results in action, improves lives, and protects our democracy.

8.    Defendant SEPTA is a state-created regional public transportation authority which, as one of the nation's major transit systems, serves nearly 4 million people in and around Philadelphia.

## JURISDICTION AND VENUE

9.    The Court has jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331(a) and § 1343(a)(3) and (4).  This Court has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202 to declare the rights of the parties and to grant all further relief found necessary and proper.

10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, in that the events which form the basis for this action took place in this District, SEPTA legally resides in this District, and SEPTA's conduct is causing ongoing harm to CIR in this District.

## FACTS

### CIR and Its Reporting

11.     CIR produces journalism for its news site, Reveal (https://www.revealnews.org),
the Reveal national public radio show and podcast, and video and live events, often in
collaboration with other newsrooms across the country.

12.     As a news organization, CIR has a strong ethics policy that bars all employees
from advocacy or activism, in line with the standards outlined by the Society of Professional
Journalists.  *See* CIR, Ethics Guide, https://www.revealnews.org/ethics-guide.

13.     CIR's reporting has been recognized for its excellence, groundbreaking creativity,
and impact.  Recent awards include: Emmy awards, a George Foster Peabody Award, a Webby
award, a Military Reporters and Editors Award, a Barlett & Steele Gold Award for investigative
business journalism, Alfred I. DuPont-Columbia University awards, a George Polk Award, IRE
Awards for multiplatform journalism, and an Edward R. Murrow Award for investigative
reporting.  CIR was a finalist for the Pulitzer Prize in 2012, 2013, and 2018 and a recipient of the
2012 MacArthur Award for Creative and Effective Institutions.  This past year, CIR's
documentary short, "Heroin(e)," was nominated for an Oscar.

14.     To reach a broad and diverse audience worldwide, CIR uses a varied and
innovative distribution model to deliver its journalism to its audience, including newsletters, art
installations, online presentations, language translations, social media campaigns, and
partnerships with other news organizations.

15.     On February 15, 2018, CIR published on its news site a story based on its year-
long investigation analyzing 31 million public records made available through the Home
Mortgage Disclosure Act.  *See* Aaron Glantz and Emmanuel Martinez, *For People of Color,*

*Banks Are Shutting the Door to Homeownership*, Reveal, Feb. 15, 2018,

https://www.revealnews.org/article/for-people-of-color-banks-are-shutting-the-door-to-homeownership/.  Reveal's data analysis—confirmed by the Associated Press and based on standard approaches used not just by journalists but also social scientists and government officials—showed that African Americans and Latinos continue to be routinely denied conventional mortgage loans at rates far higher than their white counterparts in 61 cities across America, including Philadelphia.

16.     In connection with this publication, CIR created an informative comic series describing the public data that Reveal collected and analyzed.  The comic describes Reveal's reporting about disparities in the conventional home mortgage market, including in Philadelphia. Additionally, the comic features Reveal host Al Letson and offers readers a way to contact Reveal for more data:







Reveal from The Center for Investigative Reporting analyzed **31 MILLION** mortgage records and found **61** U.S. metro areas where people of color are far more likely to be turned down than whites when applying for a conventional home loan.



The nation's capital is the **ONE METRO AREA** where Native Americans, African Americans, Latinos, and Asians are **ALL** more likely to be denied a conventional home loan.



**IN D.C.**

Native American applicants are **2.3x**

Black applicants are **2.2x**

Latino applicants are **1.9x**

Asian applicants are **1.6x**

as likely to be denied than comparable **WHITE** applicants.

Want to find out if there are lending disparities in your neighborhood and get more updates?  Text "LOAN" to Reveal and its partners at **202-873-8325.**



(Text STOP or HELP to end or get assistance. Standard rates apply.)

This is just the latest in the United States' **SORDID HISTORY** of unequal access to owning a home.



In the 1930s, the federal government actually made housing discrimination a state-sponsored enterprise by drawing up maps that strangled investment in areas where immigrants and African Americans lived. This practice is called redlining.



The 1968 Fair Housing Act made redlining illegal, but discriminatory practices continued through predatory lending or "reverse redlining." Lenders flooded communities of color with inferior loan products AND limited access to conventional lines of credit.





*See* Gabriel Hongsdusit and Cristina Kim, *A Stacked Deck: A visual look at discriminatory lending in the U.S.*, Reveal, (Feb. 21, 2018), https://www.revealnews.org/article/a-stacked-deck-a-visual-look-at-discriminatory-lending-in-the-u-s/.

17.     CIR sought to publicize its investigation and reporting on this issue with the aim of reaching members of the community likely to be interested in Reveal's reporting.  In many of the Philadelphia neighborhoods most affected by disparities in lending practices, public advertising opportunities are sparse.  Advertising on SEPTA's vehicles, which move through those neighborhoods, offered CIR a unique opportunity to reach potentially interested readers: those Philadelphians directly affected by the lending disparities its investigation had uncovered.

**SEPTA's Advertising Spaces and Ad Review Process**

18.     SEPTA operates the nation's sixth largest transit system by ridership, with 325 million annual riders.  SEPTA is one of only two United States transit agencies that operate all five major types of transit vehicles, including subway and elevated rail lines, commuter trains, light rail lines, electric trolleys, and buses.

19.     According to its own website, SEPTA offers some of the most "extensive" advertising space in Southeastern Pennsylvania.  SEPTA provides "many options for advertisers

7

to communicate with the approximately 1 million commuters that ride" SEPTA vehicles daily.  It also allows advertisers to reach the much larger number of bystanders that view SEPTA vehicles and facilities.

20.     Among other advertising opportunities, SEPTA accepts print ads on both the exterior and interior of the more than 2,500 vehicles and more than 200 stations and facilities it operates.  SEPTA, Advertising Opportunities, http://www.septa.org/sales/advertise.html (last accessed April 26, 2018).

21.     The primary purpose of SEPTA's advertising space is to generate revenue for SEPTA.

22.     SEPTA contracts with an advertising agent, Intersection (formerly Titan Outdoor LLC), to manage its advertising program.  Intersection sells advertising space on behalf of SEPTA on static and digital displays on commuter rail trains, subways, trolleys, and buses (as well as on behalf of the City of Philadelphia for advertising space on bus shelters and newsstands).

23.     The Agreement between SEPTA and Intersection states that if Intersection receives an advertising proposal for transit vehicles or stations that it believes may violate SEPTA's advertising standards, it must alert SEPTA's advertising department for review and approval.  *See* Exhibit A, § II(A)(9)(a).

24.     SEPTA retains the right to reject any advertising that is "determined by SEPTA, in its sole discretion, to be objectionable[.]"  *See* Exhibit A, § II(A)(9)(a).  Upon information and belief, SEPTA's General Counsel makes the final determination of whether any proposed advertising comports with SEPTA's advertising standards.

25.     The advertising standards adopted in 2015, which are currently in effect, prohibit twenty-two categories of ads.  *See* Exhibit A, § II.A.9(b)(iv).  Those standards ban, among other things, ads that SEPTA deems misleading or deceptive; disparaging or disrespectful; objectionable; profane or vulgar; and aesthetically inappropriate.

26.     As described above, the 2015 Advertising Standards also prohibit advertising that SEPTA, in its sole discretion, deems "political in nature," or "expressing or advocating an opinion, position or viewpoint on matters of public debate about economic, political, religious, historical or social issues."  Exhibit A, § II.A.9(b)(iv)(a)-(b).

27.     For decades, SEPTA accepted ads addressing nearly every topic under the sun, including "political and public issue[s]."  *Am. Freedom Def. Initiative v. SEPTA* ("*AFDI v. SEPTA*"), 92 F. Supp. 3d 314, 326 (E.D. Pa. 2015).

28.     In 1998, the Third Circuit held that, by leasing advertising space to the public, SEPTA had created a "designated public forum," subjecting its advertising regulations to strict scrutiny under the First and Fourteenth Amendments.  *Christ's Bride Ministries v. SEPTA*, 148 F.3d 242, 244 (3d Cir. 1998).

29.     In the wake of *Christ's Bride Ministries*, SEPTA amended its advertising policy, adding a number of categories of content deemed objectionable in an attempt to "close" the forum and avoid the burden of strict scrutiny.

30.     In 2014, SEPTA lost another First Amendment challenge to its advertising policy, with the court again concluding that SEPTA's advertising space was a designated public forum subject to strict scrutiny.  *See AFDI v. SEPTA*.

31.     In direct response to the decision in *AFDI v. SEPTA* and in a renewed effort to sanitize its advertising spaces of messages it deems objectionable, SEPTA adopted the 2015

Advertising Standards, adding provisions, including the Challenged Provisions, prohibiting certain content.

32.     Under every version of its advertising policy, including the 2015 Advertising Standards, SEPTA has accepted both commercial and non-commercial ads, from both for-profit and nonprofit entities.

33.     SEPTA regularly displays advertising on its vehicles and in other advertising space that could be viewed as political or touching on matters of public debate under the extraordinarily broad definitions of those terms in the 2015 Advertising Standards.

34.     In addition, the same screens that show advertising on some SEPTA vehicles and in some SEPTA stations also show news headlines that frequently touch on politics and controversial matters of public debate.  Recent headlines on these screens have included coverage of teachers striking in Kentucky for increased education funding, the testimony of Facebook CEO Mark Zuckerberg on privacy issues, President Trump's reconsideration of his decision to leave the Trans-Pacific Partnership, and the death of human rights activist Winnie Mandela.

## CIR's Attempt to Advertise on SEPTA

35.     On January 17, 2018, in anticipation of the release of its reporting on racial disparities in the conventional home mortgage market, CIR submitted to Intersection its proposal to purchase—at SEPTA's regular rates—advertising space on the interior of SEPTA buses, as well as on the City of Philadelphia's bus shelters and newsstands.

36.     CIR included in its application the comic that it had created to promote the news investigation.  The application explained that CIR would use elements of the comic to design its ad.

37.     The same day, January 17, 2018, Intersection denied CIR's request on SEPTA's behalf, categorizing CIR's proposal as "issue based advertising" and referring to the 2015 Advertising Standards.

38.     Even after CIR explained that it is a nonprofit journalism organization that is prohibited from engaging in advocacy and activism, SEPTA, through Intersection, maintained its denial.

39.     On March 29, 2018, after an exchange of substantive letters between CIR's General Counsel and SEPTA's General Counsel, SEPTA reiterated its position that CIR's proposed advertisement is prohibited by the 2015 Advertising Standards on the ground that it "takes a position on issues that are matters of political, economic, and social debate" and "indirectly implicates the action, inaction, prospective action or policies of a government entity," contrary to Sections II.A.9(b)(iv)(a) and II.A.9(b)(iv)(b) of the 2015 Advertising Standards. SEPTA's letter communicating its final decision is attached hereto as Exhibit B.

40.     Meanwhile, the City of Philadelphia, which controls advertising on bus shelters and newsstands, accepted CIR's proposal to place its ad in those locations.

41.     CIR currently seeks to place its proposed advertisement on SEPTA buses in the fall of 2018.  This is important timing to CIR because the publication of the advertisement would coincide with other projects CIR is coordinating in Philadelphia at that time.  Together, the advertisement and other projects will maximize CIR's exposure to the public, consistent with SEPTA's own description of its advertising space as being some of the most "extensive" advertising space in Southeastern Pennsylvania.

42.     To be ready to run its advertisement in the fall, CIR must spend significant time editing and finalizing the advertisement for buses' panels and completing other logistical and

administrative issues, and presumably, SEPTA also will need time to process CIR's advertisement and prepare it for publication on the buses.

43.     Any denial of CIR's First Amendments rights constitutes irreparable harm. However, SEPTA's improper conduct must be enjoined promptly for the additional reason of preventing any delay of the publication of CIR's advertisement in the fall of 2018.

## COUNT I—42 U.S.C. § 1983
## VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS

44.     Plaintiff incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full here.

45.     By opening up advertising space on its property for the purpose of raising revenue and through its longstanding practice of accepting a wide range of commercial and non-commercial ads for placement, SEPTA has created a designated public forum.

46.     The 2015 Advertising Standards constitute impermissible content-based restrictions on this designated public forum in violation of the Free Speech Clause of the First Amendment to the United States Constitution.

47.     Further, even if SEPTA were to demonstrate that its advertising space is no longer a designated public forum, its prohibitions on content that touches on "political" issues or "matters of public debate" violate the Free Speech Clause of the First Amendment to the United States Constitution for at least three independent reasons.

48.     First, the Challenged Provisions are unconstitutional on their face because they are so vague as to provide no basis for clear and consistent application, and accord unfettered discretion to SEPTA to censor a breathtakingly broad range of speech.

49.     Second, the Challenged Provisions discriminate based on viewpoint because they are intended to, and effectively do, suppress speech that SEPTA deems offensive or controversial.

50.     Third, the Challenged Provisions violate the First Amendment because they are not reasonable in light of the purpose of the advertising forum created by SEPTA.

51.     The Challenged Provisions are not an attempt to preserve SEPTA's advertising space for the purpose for which it was created (revenue generation) and have no reasonable relationship to that purpose; rather, they are designed to exclude speech that SEPTA deems offensive or controversial.

**WHEREFORE**, Plaintiff asks that the Court enter judgment in its favor and against Defendant, and award relief, including, but not limited to:

a.     A declaration that SEPTA's rejection of CIR's ad violates the Free Speech Clause of the First Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution;

b.     A preliminary and permanent injunction requiring SEPTA to accept the advertising proposal submitted by CIR and to permit CIR to purchase advertising for its reporting on racial disparities in mortgage lending in SEPTA advertising spaces;

c.     A preliminary and permanent injunction prohibiting SEPTA from enforcing Sections II.A.9(b)(iv)(a) and II.A.9(b)(iv)(b) of the 2015 Advertising Standards;

d.     An award of costs and attorneys' fees; and

e.     Any other relief that this Court deems just and proper.

13

HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER

By: _____
     John S. Stapleton (PA ID No. 200872)
     Dylan J. Steinberg (PA ID No. 203222)
     Rebecca S. Melley (PA ID No. 206210)
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
jstapleton@hangley.com
dsteinbeg@hangley.com
rmelley@hangley.com

ACLU OF PENNSYLVANIA

By: _____
     Mary Catherine Roper (PA ID No. 71107)
     Molly Tack-Hooper (PA ID No. 307828)
P.O. Box 60173
Philadelphia, PA 19102
(215) 592-1513
mroper@aclupa.org
mtack-hooper@aclupa.org

Brian Hauss
Jacob Hutt
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 548-2500
bhauss@aclu.org
jhutt@aclu.org
*Pending admission pro hac vice*

Seth Kreimer (PA ID No. 26102)
3400 Chestnut Street
Philadelphia, PA 19104
(215) 898-7447
skreimer@law.upenn.edu

14

D. Victoria Baranetsky
THE CENTER FOR INVESTIGATIVE
REPORTING
1400 65th Street, Suite 200
Emeryville, CA 94608
(510) 982-2890 ext. 390
vbaranetsky@revealnews.org
*Pending admission pro hac vice*