UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA



| | | |
|---|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | **FILED** |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, | : | NO. 18-cv-01839-MMB  OCT - 1 2018  KATE BARKMAN, Clerk  By_____Dep. Clerk |
| Defendant. | : | |

## PRE-TRIAL STIPULATIONS

1. The following exhibits are authenticated documents and shall be admissible at trial; however, each party reserves the right to argue that any document or its substance is not relevant.

    a. Exhibits 1 – 86 and 88, previously attached to the Declaration of John S. Stapleton (Dkt. 20)

    b. Exhibit 87, attached to CIR's Praecipe to Substitute (Dkt. 25)

    c. Exhibits 89 – 114

    d. Exhibits A – M, previously attached to the Declaration of Maryellen Madden (Dkt. 21)

    e. Exhibit 115, which SEPTA identifies as the transcript of deposition of CIR's Rule 30(b)(6) designee, Victoria Baranetsky, July 12, 2018.

2. Advertisements appearing in the following exhibits were accepted by SEPTA under the 2015 Advertising Standards and ran on SEPTA's advertising spaces: Exhibits 31 - 51, 63, 71 -- 79.

3. Advertisements appearing in the following exhibits were denied by SEPTA under the 2015 Advertising Standards: 54, 55, 57, 59, 60, 61 (two ads), 62, 64, 65.

4. Exhibits 16, 17, 18, 19, and 30 contain the entirety of the communications in advance of this litigation between CIR on the one hand and SEPTA on the other hand regarding CIR's proposal to advertise in SEPTA's advertising spaces.

5. Intersection has received and accepted at least 2,736 unique proposals for contracts to advertise in SEPTA advertising spaces since SEPTA implemented its 2015 Advertising Standards.

6. SEPTA has identified 13 unique proposals for contracts to advertise in SEPTA buses that it has rejected since implementing its 2015 Advertising Standards.

7. SEPTA has taken down at least 2 advertisements, which were the subject of executed contracts to advertise, because SEPTA determined that the advertisements violated the Challenged Provisions after the advertisements were accepted by Intersection and had begun running on SEPTA's system.

8. SEPTA has control over whether any newsfeeds run in SEPTA's digital displays.

9. SEPTA can turn off the newsfeeds that run in SEPTA's digital displays, if SEPTA decided to do so. SEPTA represents that it directed Intersection to turn off the newsfeeds in all digital displays in all of SEPTA's vehicles on September 21, 2018 and that Intersection has represented to SEPTA that the newsfeeds would be turned off within two business days of that instruction.

10. SEPTA never exercised a power or right to refuse to run or take down any particular news items.

11. SEPTA did not review the content of the newsfeeds before the content is run in SEPTA's digital displays.

12. Intersection's contract with SEPTA, as originally executed, stated that SEPTA and Intersection will split advertising revenue at the rate of 65 percent to SEPTA and 35 percent to Intersection, while also guaranteeing that SEPTA receives at least $150,000,000 in revenue over a nine-year period, starting in 2014. Some of these terms have been amended.

Approved:
[signature]
VB
10/1/18

2